## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PENN MILLERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-2081 |
| | ) | |
| CLARKSON SOY PRODUCTS, LLC, | ) | |
| PETALUMA ACQUISITION, LLC, d/b/a | ) | |
| WILLOWBROOK FEEDS, and GEMPERLE | ) | |
| EGG PACKING CO., INC., d/b/a GEMPERLE | ) | |
| ENTERPRISES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ORDER

The plaintiff, Penn Millers Insurance Company ("Penn Millers"), filed an eight-count complaint against defendants Clarkson Soy Products, LLC ("Clarkson"), Petaluma Acquisition, LLC, d/b/a Willowbrook Feeds ("Willowbrook") and Gemperle Egg Packing Co., Inc., d/b/a Gemperle Enterprises ("Gemperle") on March 30, 2005.[1]

On June 3, 2005, Clarkson filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Clarkson also filed a motion to stay this action.  On June 30, 2005, Penn Millers filed an amended complaint.  On July 6, 2005, Clarkson filed an amended motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and an amended motion to stay the proceedings.

For the following reasons, Clarkson's motion to dismiss the complaint is denied in its entirety and its motion to stay is granted in part and denied in part.

### BACKGROUND

Penn Millers insured Clarkson pursuant to a policy that was in effect at all relevant times. The policy includes commercial general liability ("CGL") coverage.  Willowbrook and

---

[1] The court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  Penn Millers is incorporated in Pennsylvania with its principal place of business in Pennsylvania.  Clarkson is incorporated in Illinois with its principal place of business in Illinois.  Willowbrook is a limited liability company, making it a citizen of every state of which any member is a citizen. *Mutual Assignment and Indem. Co. v. Lind-Waldock & Co., LLC*, 364 F.3d 858, 861 (7th Cir. 2004). Willowbrook is registered in the state of Delaware with its principal place of business in California.  It has been served with process but has not entered an appearance in this case. Gemperle is a partnership whose partners reside in California, and its principal place of business is in Turlock, California.  The amount in controversy exceeds $75,000.

Gemperle are involved in arbitration proceedings against Clarkson, and Clarkson has filed a claim pursuant to Penn Millers' CGL coverage.

The arbitration arose over Clarkson's sale of chicken feed to Willowbrook and Gemperle. Clarkson sold organic soybean meal ("the feed") to Willowbrook pursuant to a contract between the two companies. Willowbrook did not fully pay for the delivered feed and Clarkson initiated an arbitration proceeding against Willowbrook before the National Grain and Feed Association Arbitration System ("NGFA"). Clarkson seeks $95,586 from Willowbrook. In response, Willowbrook alleges that the feed did not meet contractual specifications; as a result, the feed harmed the chickens, causing damages of $1,068,834.

Gemperle also began a separate arbitration proceeding before the NGFA. Gemperle claims that it purchased feed from Clarkson. Gemperle later learned the feed was destined for Willowbrook but Willowbrook rejected the feed due to concerns about its quality. Gemperle seeks $776,761 for lost egg production and increased chicken mortality.[2]

Penn Millers seeks a declaration that it has no duty to defend or indemnify Clarkson against the purchasers' claims in the arbitration proceedings. Counts I-IV of the complaint relate to the Willowbrook arbitration. Almost identical are Counts V-VIII relating to the Gemperle arbitration.[3] Penn Millers claims it need not defend or indemnify Clarkson because (1) the alleged damages do not fall within the policy's coverage for "bodily injury" or "property damage;" (2) the damages were not caused by "occurrences" as defined by the policy; (3) the policy provisions exclude "bodily injury" or "property damage" that were "expected or intended from the standpoint of the insured;" and (4) the policy provisions exclude liability assumed in a contract agreement.

## ANALYSIS

### A.

In ruling on a motion to dismiss, the court must accept the well-pled allegations of the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). Dismissal should be granted only if it appears that the plaintiff cannot prove a set of facts supporting his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Penn Millers seeks a declaration that the policy does not cover Clarkson for any claims arising from the substandard feed. Under Illinois law, ambiguities in insurance policies are to be interpreted in favor of the insured. *Dora Township v. Indiana Ins. Co.*, 400 N.E.2d 921, 922 (Ill. 1980). However, reasonable construction must guide interpretation of an insurance contract. *Travelers Ins. Cos. v. P.C. Quote, Inc.*, 570 N.E.2d 614, 617 (Ill. App. Ct. 1991).

---

[2] Willowbrook and Gemperle are collectively referred to as "the purchasers."

[3] For the sake of brevity, the parties and the court have grouped and addressed the issues accordingly.

## I.  Property damage

Penn Millers states in its complaint that the CGL provision does not cover Clarkson's potential liability because the purchasers' damage is not property damage as defined by the policy.  Instead, Penn Millers argues, the damage is economic loss, which is not covered by the policy.  Clarkson argues that Counts I and V of the action for declaratory judgment must be dismissed because Willowbrook and Gemperle suffered property damage.

The insurance policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured."  Clarkson argues that Willowbrook's chickens allegedly suffered lower-than-expected size and growth, and Gemperle's chickens allegedly suffered increased mortality rates and reduced egg production.  Clarkson argues that Penn Millers must indemnify Clarkson for these damages, as there is physical injury to the purchasers' property.

Illinois courts construe CGL policies to exclude coverage for a seller's faulty products or for contractual liability for losses resulting from faulty work.  *See, e.g., Home Indem. Co. v. Wil-Freds, Inc.*, 601 N.E.2d 281, 284 (Ill. App. Ct. 1992) (holding that the CGL policy did not cover an insured's faulty products); *Diamond State Ins. Co. v. Chester-Jensen Co. Inc.*, 611 N.E.2d 1083, 1091 (Ill. App. Ct. 1993) (holding that coverage is "not for contractual liability of the insured for economic loss because the product . . . is not that for which the damaged person bargained").  Further, Illinois courts generally do not construe lost profits, lost value of a finished product or repairs to products as property damage.  *See, e.g., Hamilton Die Cast, Inc. v. United States Fid. & Guar. Co.*, 508 F.2d 417, 419 (7th Cir. 1975) (holding that lost profits did not constitute property damage); *Diamond State*, 611 N.E.2d at 1089 (holding that lost rent, costs of repair and increased operating expenses are economic losses).

Although Illinois courts have excluded lost profits or diminished value from the definition of property damage, in this case it is still unclear whether the damage allegedly suffered by the purchasers took the form of lost profits, damage to tangible property, or a combination of the two.  The motion to dismiss is denied as to Counts I and V of the complaint.  Penn Millers has stated a claim because the underlying arbitration proceedings, to the extent they are based on lost profits, do not fall within the policy coverage for property damage.

## II. Occurrence

Penn Millers seeks a declaration that the circumstances giving rise to the arbitration proceedings do not constitute an "occurrence" as defined by the policy.  The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same conditions."  Clarkson states that Illinois law has defined an accident as "an unforeseen occurrence, usually of an untoward or disastrous character."  *State Farm Fire & Cas. Co. v. Tillerson*, 777 N.E.2d 986, 990 (Ill. App. Ct. 2002).  Clarkson argues that the alleged injuries to the chickens fit this description, and that Penn Millers does not suggest that Clarkson's actions were intentional.

Clarkson also argues that the complaint alleges repeated and continuous exposure of the chickens to the feed, indicating an occurrence under the policy.  *See United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 932 (Ill. 1991).  *Wilkin* involved repeated and continuous exposure of humans to asbestos fibers, which the Illinois Supreme Court ruled an "occurrence" under the policy.  *See Wilkin*, 578 N.E.2d at 932.  Clarkson argues that the situation in *Wilkin* is sufficiently analogous; the chickens' repeated and continuous exposure to the feed constitutes an "occurrence."

Penn Millers suggests Clarkson was aware its feed was substandard, which indicates that the sale of the feed and resulting damages were not accidents; thus, they cannot be considered the result of occurrences that are covered by the policy.  Further, Penn Millers argues this case is not analogous to the asbestos-related injury in *Wilkin*, citing *Diamond State*, 611 N.E.2d at 1092 (distinguishing *Wilkin* because "the [asbestos-related] damage was not a result of the failure of the asbestos to perform its contractual function as an insulator").  In contrast, harm to chickens "is inherent in the risk" of selling substandard chicken feed.  *American Fire & Cas. Co. v. Broeren Russo Const., Inc.*, 54 F. Supp. 2d 842, 848 (C.D. Ill. 1999) (finding no "occurrence" when the resulting condition is within the normal expectancies inherent in the risk of product or performance failure).

Illinois courts have held that occurrences, as defined by insurance policies, refer to incidents that are accidental, lacking consequences that are intended or expected by the insured.  *Tillerson*, 777 N.E.2d at 990.  Conduct leading to an expected outcome is not an "occurrence" covered by insurance.  *Bituminous Cas. Corp. v. Newberg Constr.*, 578 N.E.2d 1003, 1009 (Ill. App. Ct. 1991).  Further, "[t]he mere failure of a product to perform as warranted is not beyond the realm of expectation and is foreseeable by the parties."  *Diamond State*, 611 N.E.2d at 1092.  Improper manufacture is not an occurrence; a "policy does not . . . cover 'an occurrence of alleged negligent manufacture;' it covers negligent manufacture that results in 'an occurrence.'"  *Hamilton Die Cast*, 508 F.2d at 420.

Thus, under Illinois law, courts do not construe expected damages or improper manufacture as occurrences covered by insurance policies, especially when, as Penn Millers alleges, Clarkson was aware of the risks and could expect damages to result from the substandard feed.  Penn Millers alleges facts in Counts II and VI that constitute a valid claim for declaratory relief; therefore, the motion to dismiss those counts is denied.

### III. Expected or intended consequences

In ruling on a motion to dismiss, the court must draw all reasonable inferences in favor of the plaintiff.  *Szumny v. American Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001).  Penn Millers seeks a declaration that the policy does not cover the damages arising from the circumstances present in this case because the policy excludes coverage for damages that are "expected or intended from the standpoint of the insured."  Clarkson argues Counts III and VII must be dismissed because Penn Millers never alleges that Clarkson expected or intended the consequences that accrued.  This argument ignores the reasonable inferences drawn from the allegations in the complaint.

Penn Millers alleges that Clarkson knew the feed's requirements and knew the feed was not properly processed.  Clarkson, as a distributor of chicken feed, should know the consequences of delivering feed of a sub-par quality.   The complaint states that Curtis Bennett, a Clarkson employee, said the soybeans used in the feed were "old and crappy," and that Clarkson was aware that the soybeans were not processed in a manner that would meet the "protein/urease requirements of a poultry client."  Further, the complaint alleges that at the time of the sale to Gemperle, Clarkson was aware of the substandard quality of the feed and the corresponding risk to chickens.  It can be reasonably inferred that Clarkson should have expected the consequences that occurred.

Penn Millers need not prove its case at this early stage of the litigation; it need only state a plausible claim for relief.  The court must draw all reasonable inferences in favor of Penn Millers.  Clarkson's motion to dismiss Counts III and VII of the complaint is denied.

### IV. Assumption of liability

Penn Millers claims that the CGL provision excludes coverage for bodily injury or property damages "for which the insured is obligated to pay damages by reason of assumption of liability in a contract agreement."  Clarkson argues that Counts IV and VIII should be dismissed because Penn Millers produces no contractual evidence that Clarkson assumed liability.  Clarkson further argues that the pending arbitration proceedings relate to accidental damage done to the chickens and/or their egg-laying capacity – not breach of contract.

If the parties' arbitration relates to property damage, the damage allegedly arose from a breach of contract.  Penn Millers argues that the Illinois Appellate Court found a policy provision identical to that in the Clarkson policy to exclude coverage based on assumption of liability because the damages were related to a breach of contract.  *See, e.g., Tillerson*, 777 N.E.2d at 992 (finding CGL insurance covers "tort liability for damage to other property, not for the insured's contractual liability for economic loss.") (citations omitted).

Neither party has provided the Willowbrook and Gemperle contracts to show whether Clarkson agreed to an "assumption of liability."  As long as there exists a possibility that the contracts will clarify this issue, the motion to dismiss Counts IV and VIII of the complaint must be denied.

While Illinois courts generally construe insurance contracts in favor of the insured, the court on a motion to dismiss must view the facts in the light most favorable to the plaintiff and draw reasonable inferences in the plaintiff's favor.  At this early stage of the litigation, the court views the complaint to determine whether the allegations are inconsistent with the plaintiff's claim for relief.  The court is not concerned at this stage with the probability that Penn Millers can prove each and every allegation in its complaint.  The Illinois courts' interpretations of insurance contracts lead this court to conclude that Penn Millers has stated potentially meritorious claims.  Thus, the motion to dismiss is denied in its entirety.

### B.

Clarkson moves the court to stay this action because the complaint overlaps the pending arbitration. Clarkson argues that a stay of the proceedings would enhance judicial efficiency, as the issues raised by Penn Millers will be addressed in the NGFA arbitration proceedings. Specifically, they contend that arbitration will reveal whether Clarkson was aware of the potential for the purchasers' damages, whether Clarkson intended or expected the damage, whether the feed was defective, and whether Clarkson assumed liability in the contracts. Clarkson cites *Murphy v. Urso* for the proposition that an insurer's duty to indemnify should not be decided in a declaratory judgment prior to adjudicating the underlying action unless the issues in the two actions are separable. *Murphy v. Urso*, 430 N.E.2d 1079, 1084 (Ill. 1981) (referring to a common law action and a declaratory judgment action with underlying issues in common). Clarkson also argues that there may be no damages for Penn Millers to indemnify, depending on the results of the arbitration proceedings.

Penn Millers claims that the insurer's duty to defend and indemnify can and should be determined in a declaratory judgment action during the pendency of the underlying action in another forum. Penn Millers further states that "[a]n insurance company has a duty to defend only if the complaint alleges facts within or potentially within the coverage of the policy, unless the insurance company has knowledge of unpleaded facts which . . . indicate that the claim is within or potentially within coverage." *Indiana Ins. Co. v. Hydra Corp.*, 615 N.E.2d 70, 72 (1993) (citations omitted). Penn Millers concedes that judicial efficiency would be enhanced by a stay of the proceedings in this case, but hinges its concession upon an agreement of all parties to a proposed motion limiting the amount of liability. However, the parties have not submitted a proposed agreed motion to the court, nor is there any indication that the parties have so agreed.

This Court agrees that judicial efficiency might be enhanced by a short stay. However, the court is not inclined to stay the action indefinitely. Therefore, this Court grants a short motion to stay. A status conference is scheduled for October 24, 2005 at 1:30 p.m by telephone conference call. The court will initiate the call. At that time, the court will determine whether a further stay is warranted.

## CONCLUSION

For the foregoing reasons, the court denies Clarkson's motion to dismiss Counts I-VIII of the amended complaint [#20]. The court grants in part and denies in part Clarkson's motion to stay [#22]. The proceedings are stayed until October 24, 2005. A status conference is scheduled for October 24, 2005 at 1:30 p.m. by telephone conference call. The court will initiate the call.

Entered this 16th day of August, 2005.

**s/Harold A. Baker**

_____

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE